UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SON P. DANG<br><br>                Plaintiff,<br><br>v.<br><br>RESIDENTIAL CREDIT SOLUTIONS, INC.; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION (fka EMC MORTGAGE, LLC); J.P. MORGAN MORTGAGE ACQUISITION CORP.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOES 1 through 20, inclusive,<br><br>                Defendants. | Case No. C-14-02587-RMW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION FOR SANCTIONS**<br><br>[Re Docket Nos. 40, 41] |

Plaintiff Son P. Dang's First Amended Complaint against defendants alleges Wrongful Foreclosure, Slander of Title, Violation of California Civil Code § 2923.5, Violation of 12 U.S.C. § 2605, and Violations of California Business and Professions Code § 17200 *et seq.* Dkt. No. 36 ("FAC"). Defendants filed a motion to dismiss the FAC on the grounds that it fails to state a claim upon which relief can be granted under Fed. R. Civ. Proc. 12(b)(6). Dkt. No. 40 ("MTD"). For the reasons stated below, the court grants defendants' motion to dismiss without leave to amend.

# I. Background

### A. Factual Background[1]

On July 19, 2007 Dang borrowed $670,000 from First Magnus Financial Corporation ("First Magnus") to purchase property in San Jose. Dkt. No. 40-3, RJN3 Ex. 2. The loan was secured by a Promissory Note, Compl. Ex. A, and a recorded Deed of Trust, RJN3 Ex. 2. The Deed of Trust was recorded on July 27, 2007 and lists First Magnus as the lender, Alliance Title as trustee, and defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as the lender's nominee and beneficiary. RJN3 Ex. 2.

First Magnus filed for Chapter 11 bankruptcy in August 2007. FAC ¶ 15, Compl. Ex. K.

On February 19, 2010, a Grant Deed was recorded whereby Dang purportedly conveyed the property at 4134 Linetta Court, San Jose, CA 95148 ("subject property") to Cornerstone Investments. RJN Ex. 5.[2]

From August 31, 2010 to October 4, 2010, plaintiff alleges that he sent multiple letters requesting verification of proofs of claim to EMC Mortgage Corporation ("EMC"). FAC ¶ 16. Two of these letters were attached to the initial complaint. The letter dated August 31, 2010 is labeled "QUALIFIED WRITTEN REQUEST: Verification of Proof of claim Requested" and is addressed to EMC. On September 9, 2010 EMC acknowledged receipt of the correspondence. FAC ¶ 16, Compl. Ex. J. The letter dated October 4, 2010 is labeled "LEGAL NOTICE: Third Request for Proof of Claim" and is addressed to EMC. Compl. Ex. J. There is no evidence of a response from EMC to this letter.

---

[1] Plaintiff failed to reattach any of the exhibits that were part of the initial complaint, but makes reference to facts contained therein in his FAC. As per defendants' Requests for Judicial Notice, Dkt. 7 and Dkt. 15 as RJN1, Dkt. 23 as RJN2, Dkt. 40-3 as RJN3, the court takes judicial notice of the foreclosure-related documents recorded in the Santa Clara County Recorder's Office; filings from this court and the Santa Clara County Superior Court case involving plaintiff and defendants over the same foreclosure matter; and filings in plaintiff's bankruptcy petition. The court does not take notice of any disputed facts contained within the documents, and does not rely on any facts contained therein that are reasonably subject to dispute. Fed. R. Evid. 201(b)(2).

[2] Because of the Grant Deed, Defendants allege that plaintiff is not a proper party to the action. Plaintiff responds that this was an erroneous assignment and that Cornerstone Investments has quitclaimed its interest in the subject property. Dkt. 43, Oppos. to MTD 4:6-9. Although plaintiff does not provide any factual support for this argument, the court must take the allegations in the complaint as true, and the FAC does allege that Dang "owns real property located at 4134 Linetta Court, San Jose, CA 95148." FAC ¶ 2. Accordingly, the court disregards this argument.

1    Dang fell behind in his payments and was almost $45,000 in arrears on November 17, 2010
2  when a Notice of Default and Election to Sell Under Deed of Trust ("NOD") was recorded. RJN3
3  Ex. 3. The NOD was signed by Quality Loan Service Corporation ("Quality") as "agent for
4  Beneficiary," without naming the beneficiary, and the NOD directs plaintiff to J.P. Morgan
5  Mortgage Acquisition Corp. ("JPMMAC") c/o Quality for information about the foreclosure. Dkt.
6  40-3, RJN3 Ex. 3. The NOD also states that the beneficiary declares that it complied with Cal. Civ.
7  Code 2923.5, and a Declaration of Compliance signed by JPMorgan Chase Bank, NA ("Chase")
8  was incorporated by reference and attached. RJN3 Ex. 3.
9    On June 8, 2012, a first Assignment of the Deed of Trust was recorded, assigning the
10  beneficial interest in the DOT to EMC by MERS as nominee for First Magnus. FAC ¶ 19, Compl.
11  Ex. E.
12    On July 5, 2012, a Substitution of Trustee from Alliance Title to Quality was recorded.
13  RJN3 Ex. 6. The Substitution was signed by Residential Credit Solutions ("Residential") as
14  Attorney in Fact for EMC. RJN3 Ex. 6.
15    On July 10, 2012, a first Notice of Trustee's Sale against the subject property was recorded
16  by Quality. FAC ¶ 20, Compl. Ex. G.
17    On August 1, 2012, a second Assignment of Deed of Trust was recorded, transferring the
18  Deed of Trust from EMC to JPMMAC. FAC ¶ 21, Compl. Ex. H.
19    On November 7, 2012, Plaintiff sent a letter labeled to be a Qualified Written Request to
20  Residential, which Residential acknowledged the same day that it received. FAC ¶ 22, Compl. Ex. I.
21  Residential was the servicer of the loan during that period. Compl. ¶ 13, Compl. Ex. D.
22    On June 13, 2013, a second Notice of Trustee's Sale was recorded by Quality. Dkt. No. 7-2,
23  RJN1 Ex. 2.
24    On July 11, 2013 plaintiff filed a Chapter 13 Bankruptcy Petition. Dkt. No. 7-3, RJN1 Ex. 3.
25  That Bankruptcy case was closed on September 18, 2013 after plaintiff failed to file required
26  documents.
27    On July 12, 2013, a third Assignment of Deed of Trust was recorded, transferring the Deed
28  of Trust from JPMMAC to REOCO, Inc. Dkt. No. 7-1, RJN1 Ex. 1.

On February 21, 2014, a third Notice of Trustee's Sale was recorded by Quality. Dkt. No. 7-4, RJN1 Ex. 4.

On April 9, 2014 Quality recorded a fourth Notice of Trustee's Sale. FAC ¶ 23, RJN3 Ex. 7.

On April 25, 2014 plaintiff sent a letter labeled "RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, TILA REQUEST" to Quality and Chase.

On May 6, 2014 plaintiff filed a second Chapter 13 Bankruptcy Petition, which is currently pending. Dkt. No. 7-5. The bankruptcy has been converted to a Chapter 11 bankruptcy.

On June 13, 2014, REOCO assigned the Deed of Trust back to JPMMAC. Dkt. No. 15-1, RJN1 Ex. 8.

To summarize the transfers of the deed of trust, the deed began with First Magnus and was transferred to EMC; from EMC to JPMMAC; from JPMMAC to REOCO; and finally from REOCO back to JPMMAC.  The trustee changed from Alliance Title to Quality.

### B. Plaintiff's Prior Litigation

In addition to the two bankruptcy petitions, plaintiff filed two prior lawsuits involving the current mortgage. Plaintiff filed his first lawsuit on July 9, 2013 against J.P. Morgan and Quality in Santa Clara County Superior Court. Dkt. No. 7-6. Dang dismissed that case without prejudice prior to any appearance by defendants. *Id.* Plaintiff filed a second lawsuit on October 7, 2013 before this court, Dkt. No. 7-7, and plaintiff eventually voluntarily dismissed the case without prejudice on April 25, 2014. The current litigation is plaintiff's third lawsuit.

### C. First Amended Complaint

The FAC alleges five claims: (1) wrongful foreclosure; (2) slander of title; (3) violation of Cal. Civ. Code § 2923.5; (4) violation of 12 U.S.C. § 2605; (5) violation of California Business and Professions Code § 17200 *et seq.* Claims one, two, three, and five are all premised on the invalidity of the multiple assignments of the Deed of Trust. The FAC does not name Quality as a defendant, but alleges the third and fourth claims against Quality. The Third claim is only alleged against Quality and JPMMAC, the fourth claim is alleged against Chase, Residential and Quality, while

claims one, two and five are alleged against "all Defendants." As noted above, plaintiff also failed to reattach any exhibits to the FAC.

## II. Analysis

### A. Standard for Motion to Dismiss

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *Contreras v. JPMorgan Chase*, 2014 WL 4247732 (C.D. Cal. Aug. 28, 2014).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). *See also Contreras*, 2014 WL 4247732.

### B. Plaintiff's claims for wrongful foreclosure (claim 1) and slander of title (claim 2)

Both claims 1 and 2 are based on the argument that defendants lack standing to initiate foreclosure proceedings due to the fact that the assignments of the DOT were invalid. Accordingly, the issues of standing to challenge the assignments and the applicability of the "tender rule" are addressed first.

### 1. The "tender rule"

The tender rule provides that an equitable wrongful foreclosure "action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." *Bingham v. Ocwen Loan Servicing, LLC*, 2014 WL 1494005, at *7 (N.D. Cal. Apr. 16, 2014). "This rule is rooted in equity and premised on the notion that it would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *Alvarez v. Wells Fargo Bank, N.A.*, 2013 WL 425097 (C.D. Cal. Jan. 31, 2013) (internal quotation marks and citation omitted).

There has been some dispute as to whether the tender rule applies in situations where the foreclosure sale has not yet occurred. *See Chan Tang v. Bank of Am., N.A.*, 2012 WL 960373 (C.D. Cal. Mar. 19, 2012); *Rodriguez v. Bank of America*, 2011 WL 5864108, at *3 (N.D. Cal. Nov.22, 2011) ("There is some division in the district courts, however, as to whether the 'tender rule' precludes a claimant from seeking to prevent a pending nonjudicial foreclosure, as opposed to attempting to 'unwind' a foreclosure that has taken place.").

Many courts have applied the tender rule in situations where a sale is pending. *See, e.g., Alcaraz v. Wachovia Mortg.*, FSB, 592 F. Supp. 2d 1296, 1304 (E.D. Cal. 2009); *Alicea v. GE Money Bank*, No. C 09-00091 SBA, 2009 WL 2136969 (N.D. Cal. July 16, 2009); *Christie v. Morgan Stanley Mortgage Capital Holdings, LLC*, 2012 WL 5363368 (C.D. Cal. Oct. 30, 2012). Others have chosen not to apply the tender rule in those situations. *See, e.g., Hague v. Wells Fargo Bank, N.A.*, No. C11–02366 TEH, 2011 WL 6055759, at *5 (N.D. Cal. Dec.6, 2011) ("Tender is not required in this case, as the foreclosure at issue has not yet occurred."); *Nguyen v. JP Morgan Chase Bank N.A.*, 2013 WL 2146606, at *6 (N.D. Cal. May 15, 2013) ("[T]he court declines to apply the tender rule at this early pleading stage without an "opportunity to undertake a more informed analysis of the equities."); *Chan Tang*, 2012 WL 960373 (holding that court did not believe that "postponing a sale when there are serious defects in a bank's compliance with California's comprehensive statutory foreclosure scheme is a 'useless act'").

In this case, a tender may not be required because the foreclosure sale has not yet been completed. However, as discussed below, an offer of tender would not cure plaintiff's standing problem.

### 2. Standing to challenge subsequent assignments

The issue of a borrower's standing to challenge the assignments of a note and DOT securing a home loan has been vigorously litigated in both state and federal courts in California within the past few years. The common argument by borrowers is the presence of irregularities in the transfer of rights and obligations under assignments and substitutions lead to defendants' lack of standing to initiate non-judicial foreclosure. However, "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 511 (2013), as modified June 12, 2013.

In *Jenkins*, which has become the majority view in California state and federal courts, the court found that even if the assignments or transfers of the promissory note subsequent to plaintiff's execution were invalid, the relevant parties to such a transaction were the holders (transferors) of the promissory note and the third party acquirers (transferees) of the note. "As an unrelated third party to the alleged improper securitization, and any other subsequent transfers of the beneficial interest under the promissory note, Jenkins lacks standing to enforce any agreements . . . relating to such transactions." *Id.* at 515. As to plaintiff, an assignment merely substituted one creditor for another, without changing the obligations under the note. *Id.* The court went on to state that "Jenkins is not the victim of such invalid transfers because her obligations under the note remained unchanged. Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note." *Id.*

As an alternative argument, following *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1152 (2011), the court in *Jenkins* held that a judicial action challenging the authority of a defendant to initiate nonjudicial foreclosure is improper because California's nonjudicial foreclosure scheme and statutory provisions do not contain any express authority for such a

preemptive action. *Jenkins,* 216 Cal. App. 4th at 512-13. Moreover, because the statutory provisions authorize a "trustee, mortgagee, or beneficiary, or *any of their authorized agents* " to initiate a nonjudicial foreclosure (§ 2924, subd. (a)(1), emphasis added), the court held they do not require that the foreclosing party have an actual beneficial interest in both the promissory note and deed of trust to commence and execute a nonjudicial foreclosure sale. *Id.* at 513; *but see Sacchi v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 2533029 (C.D. Cal. June 24, 2011) (allowing plaintiff's foreclosure -related claims survive a motion to dismiss because plaintiff pled a specific factual basis for asserting that defendant had no beneficial interest in the DOT when it acted to foreclose on plaintiff's home).

In *Gomes* the court considered whether California's nonjudicial foreclosure statutes allow a defaulting trustor-debtor, before his or her property is sold, to bring a preemptive judicial action to challenge whether the person initiating the foreclosure was authorized to do so by the person who possessed a secured interest in the property. 192 Cal. App. 4th 1149 (2011). The plaintiff in *Gomes* alleged that the entity which initiated the nonjudicial foreclosure process did not have the authority to do so because it was not the owner or the authorized agent of the owner of the promissory note. The *Gomes* court found that an additional requirement that the foreclosing entity must "demonstrate in court that it is authorized to initiate a foreclosure" before the foreclosure can proceed would "interject the courts into [the] comprehensive nonjudicial scheme" created by the Legislature, and "would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy." *Id.* at pp. 1154-1156.

A minority of courts recognize the existence of valid claims where plaintiffs allege that the defendant who invoked the power of sale was not the true beneficiary under the deed of trust. *See Glaski v. Bank of Am., Nat'l Ass'n*, 218 Cal. App. 4th 1079, 1094 (2013), reh'g denied (Aug. 29, 2013). According to this minority view a borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would render the challenged assignments void, not merely voidable. *Id.* at 1094-95. *Glaski* expressly rejected "the view that a borrower's challenge to an assignment must fail once it is determined that the borrower was not a party to, or third party beneficiary of, the assignment agreement." *Id.*

*Glaski* has not been followed by other courts, remaining a minority view. *Patel v. U.S. Bank, N.A.*, 2014 WL 3870388 (N.D. Cal. Aug. 6, 2014) ("[T]his court and its California state court siblings have almost universally rejected *Glaski* and adopted *Jenkins*."); *Mendoza v. JPMorgan Chase Bank, N.A.*, 228 Cal. App. 4th 1020, 1034 (2014), review filed (Sept. 23, 2014) ("We can find no state or federal cases to support the *Glaski* analysis and will follow the federal lead in rejecting this minority holding."). This court will also follow *Jenkins* and not *Glaski*.

Here, plaintiff alleges that defendants lacked standing to initiate foreclosure because they were not the true holders of the beneficial interest under the DOT at the time the NOD was recorded due to the invalidity and delay of the multiple assignments of the DOT among defendants. This case falls squarely under the holdings of *Jenkins* and *Gomes* as plaintiff is essentially trying to bring a preemptive judicial action to determine whether defendants had the authority to initiate nonjudicial foreclosure on his home. Because plaintiff is an unrelated third party to the transfers of the beneficial interest under the DOT, plaintiff lacks standing to enforce the agreements relating to such transactions. Moreover, plaintiff's obligations under the note remained unchanged so there is no controversy between him and defendants as to these assignments.

Since plaintiff's wrongful foreclosure and slander of title claims are premised on similar arguments, they both fail for the reasons stated above. These claims cannot be saved by amendment and plaintiff has had multiple opportunities already to assert valid claims but has failed to do. Accordingly, Defendants' motion to dismiss is GRANTED, and claims one and two are dismissed with prejudice.

**C.  Plaintiff's claim for violation of California Civil Code § 2923.5 (claim 3)**

Plaintiff alleges that the NOD he received on November 17, 2010 did not comply with Cal. Civil Code § 2923.5(a), which provides that "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until" 30 days after contact is made with the borrower to discuss options to avoid foreclosure. Plaintiff does not allege that no contact was made, but instead alleges that contact was not made by a "mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent" because none of the transfers of his Deed of Trust had been recorded at the time of the Notice of Default. FAC ¶¶ 56-60. The only remedy for

1   violation of § 2923.5 is "the postponement of a foreclosure sale until the requirements of the statute

2   have been fulfilled." *Shaterian v. Wells Fargo Bank, N.A.,* 829 F. Supp. 2d 873, 886 (N.D. Cal.

3   2011) (denying motion to dismiss § 2923.5 claim) (citing *Mabry v. Super. Ct.,* 185 Cal. App. 4th

4   208, 213 (2010)).

5         Defendant argues first that there was no problem with the assignments and transfers relating

6   to the loan, and also argues that the statute of limitations has passed for a § 2923.5 claim. Dkt. No.

7   40-1 at 11 (citing Cal. Code Civ. P. § 338(a) and its three-year statute of limitations). Plaintiff

8   responds that the statute of limitations should be equitably tolled because "Plaintiff did not discover

9   Defendants' recording of fraudulent and void assignments and foreclosure notices until he began to

10  exercise reasonable diligence by sending Defendants qualified written requests around November 7,

11  2012." Dkt. No. 43 at 10.

12        First, the court agrees with defendant that there were no issues with the transfers and

13  assignments of the DOT. Mere delay in the recording the transfers does not invalidate them. *See*

14  Cal. Civ. Code § 2934a(d) ("Once recorded, the substitution [of trustee] shall constitute conclusive

15  evidence of the authority of the substituted trustee or his or her agents to act pursuant to this

16  section."); *Madlaing v. JPMorgan Chase Bank, N.A.*, 2013 WL 2403379 *12 (E.D. Cal. 2013);

17  *Rossberg v. Bank of Am., N.A.*, 219 Cal. App. 4th 1481, 1496 (2013) ("Nothing requires a notary to

18  acknowledge a document at the same time it is executed, and even a lengthy delay between the

19  execution and acknowledgment does not invalidate the document.").

20        Furthermore, plaintiff's claim is barred by the statute of limitations. Equitable tolling of the

21  statute of limitations is not appropriate here. Despite the statement in plaintiff's opposition, it

22  appears that plaintiff first sent letters inquiring about the ownership of his mortgage in September

23  2009. *See* Dkt. No. 1-7 (letter to EMC stating "This is the Second Request, the First Request mailed:

24  Sep 15, 2009"; letter questions whether EMC is the holder in due course of his mortgage) (emphasis

25  in original).[3] Plaintiff's complaint also alleges that he sent "multiple letters requesting verification

26  of proofs of claim to EMC" from August 31, 2010 to October 4, 2010. FAC ¶ 16. This shows that

---

[3] It is interesting that plaintiff knew in 2009 or 2010—before the notice of default was recorded—to direct his inquiry to EMC, when the Assignment of Deed of Trust from First Magnus to EMC was not recorded until June 8, 2012.

ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR SANCTIONS
Case No. C-14-2587-RMW
RC
- 10 -

plaintiff was "exercising reasonable diligence" to determine who owned his mortgage well before the 2012 date argued in the opposition to the motion to dismiss. Furthermore, the Notice of Default itself named parties that plaintiff believed were strangers to his loan, and were not involved in the original mortgage. The allegations in the FAC and Notice of Default itself establish that plaintiff knew or should have known of his claim at least in August 2010. Accordingly, tolling does not apply to plaintiff's § 2923.5 claim, and the claim is dismissed with prejudice.

### D. Plaintiff's claim for violation of 12 U.S.C. § 2605 (RESPA) (claim 4)

RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans. 12 U.S.C. § 2605(e)(1)(A), (e)(2). If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a "pattern or practice of noncompliance," statutory damages of up to $1,000. Id. § 2605(f). Only servicers of loans are subject to § 2605(e)'s duty to respond. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012) cert. denied, 133 S. Ct. 2800 (2013).

> Under § 2605(e), a borrower's written inquiry requires a response as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's "reasons for the belief . . . that the account is in error" or "provides sufficient detail to the servicer regarding other information sought by the borrower," and (3) seeks "information relating to the servicing of [the] loan." 12 U.S.C. § 2605(e)(1)(A)-(B). . . . RESPA defines the term "servicing" to encompass only "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments." *Id.* § 2605(i)(3). "Servicing," so defined, does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement.

*Medrano*, 704 F.3d at 666-67.

Letters that challenge the terms of a loan or mortgage documents are not disputes regarding servicing of the loan and thus are not qualified written requests ("QWR") that trigger duty to respond under section 2605. *Id.* at 667.

*Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1196 (E.D. Cal. 2010) explained the requirements to allege a RESPA § 2605 claim. The court explained that a complaint failed to allege sufficient facts to state a claim under RESPA § 2605 where it failed to allege facts indicating

1   that the written correspondence concerned specifically the servicing of plaintiff's loan, or that the
2   correspondence was directed to a loan servicer. Moreover, the court held that a conclusory
3   allegation that the correspondence was a QWR was insufficient. *Id.*

4   A plaintiff also must allege sufficient facts suggesting he sustained actual damages as a
5   result of a § 2605 violation; conclusory allegations that he "suffered damages" are insufficient.
6   Federal courts have read § 2605 as requiring a plaintiff to plead specific facts showing both the
7   defendant's failure to respond and the plaintiff's suffering of "pecuniary damages" in order to avoid
8   the dismissal of a RESPA claim. *Jenkins*, 216 Cal. App. 4th at 531-32. "In effect, this pleading
9   requirement has limited RESPA claims to circumstances in which a plaintiff can allege specific
10  facts to show causation, or in other words actual damages to the borrower *as a result* of the failure
11  to comply with RESPA requirements. *Id.* In *Jenkins*, the court found that plaintiff failed to show her
12  claimed damages for "devastation of her credit," "emotional distress related to the threatened
13  foreclosure of her [h]ome," "late fees," and time spent attempting to avoid foreclosure, were
14  plausibly incurred because of the alleged RESPA violation, and were not the consequences of her
15  earlier default on her loan and/or her attempts to dispute the validity of the promissory note and the
16  security interest created by the deed of trust.

17  Statements that the plaintiff was harmed by not knowing the true owner of note, or that he
18  could not name the real party in interest, or even that he was harmed because he did not know
19  whether his payments were properly applied, was considered insufficient to allege the pecuniary
20  harm required by the statute. *See Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223
21  (E.D. Cal. 2010); *Tamburri v. Suntrust Mortgage, Inc.*, 875 F. Supp. 2d 1009, 1014 (N.D. Cal.
22  2012). Moreover, where a plaintiff sent the QWR after she had already defaulted on her loan, the
23  court held that the complaint failed to allege facts plausibly showing that any claimed damages for
24  fees, interest, and penalties incurred because of her default were the consequence of any alleged
25  RESPA violation. *Tamburri*, 875 F. Supp. 2d at 1015.

26  Here, plaintiff offers only conclusory allegations that the correspondence he sent to
27  defendants qualified as QWRs under RESPA and that he suffered actual damages. Because plaintiff
28

1    fails to reattach the correspondence to the FAC, the court considered the correspondence plaintiff

2    attached to his original complaint. Dkt. No. 1.

3          Plaintiff's letters to EMC from August 31, 2010 and October 4, 2010, as well as the April

4    25, 2014 letters to Quality and Chase, did not specifically concern the servicing of plaintiff's loan,

5    and failed to allege sufficient facts that the recipients were loan servicers at the time, so those letters

6    do not qualify as QWRs under RESPA. The letters requested verification of the proof of claim and

7    disputed the validity of the debt, so defendants were not required to respond. *Medrano*, 704 F.3d at

8    667. The only letter that could potentially qualify as a QWR in regards to its content is the

9    November 7, 2012 letter plaintiff sent to Residential.  Residential acknowledged receipt of the letter

10   and apparently was the servicer of the loan during that period. Nonetheless, plaintiff's claim under

11   RESPA still fails because of insufficient facts showing he suffered actual damages caused by a

12   RESPA violation.

13         Plaintiff essentially claims that he suffered damages because he could not identify "in whose

14   pockets Plaintiff's mortgage payments were being deposited."  FAC ¶ 65. What plaintiff alleges as

15   actual damages arising out of the RESPA violations include "mortgage payments that were not

16   properly credited to her [sic] account, devastation to her [sic] reputation and credit rating, monetary

17   damages, and the loss of title to their [sic] property through potential wrongful foreclosure", "mental

18   anguish, inconvenience, and worries through the loss of her [sic] home, as well as late fees." FAC

19   ¶ 66-67. Plaintiff does not point to any specific payments that were not properly credited, nor does

20   plaintiff dispute that he was in default. Plaintiff fails to show how any alleged damages actually

21   resulted from the alleged RESPA violations, rather than as a  consequence of his earlier default on

22   his loan and his attempts to dispute the validity of the assignments of the DOT. Moreover, any

23   damages from the letters that plaintiff sent after he had already defaulted are not plausibly related to

24   the RESPA violation. *Tamburri*, 875 F. Supp. 2d at 1015.

25         As explained, plaintiff has only alleged one possible QWR under § 2605 (the November 7,

26   2012 letter sent to Residential), but has not plausibly alleged any damages caused by a failure to

27   responds to the QWR. Therefore, defendant's motion to dismiss as to the fourth claim is

28   GRANTED. At the hearing on the motion to dismiss, plaintiff indicated that he could not allege

further specific facts supporting his damages claim. Accordingly, the dismissal is without leave to amend.

### E. Plaintiff's claim for violation of California Business and Professions Code § 17200 *et seq* (claim 5)

Plaintiff alleges that defendants' violations of Cal. Civil Code §§ 2924 *et seq* and 2923.5 also constitute violations of Cal. Bus. and Prof. Code § 17200 (the "UCL"), but plaintiff fails to assert sufficient fact to show how defendants violated Cal. Civil Code §§ 2924 *et seq* and 2923.5. As plaintiff observes, his success under this claim "depends on the success or failure of their [sic] substantive causes of action." FAC ¶ 70. As plaintiff's § 2923.5 claim was dismised with prejudice and he failed to allege any specific facts to show a violation of section 2924 *et seq*, defendants' motion to dismiss is GRANTED as to plaintiff's fifth claim with prejudice.

### F. Sanctions Request

At the hearing on the motion to remand, defendants orally moved for sanctions and costs for having to respond to the motion to remand, despite the express inclusion of a federal claim and statement of jurisdiction in the amended complaint. Dkt. No. 39. The court allowed the parties to submit papers regarding sanctions and costs, and directed the defendant to identify any legal basis for sanctions. Dkt. Nos. 41, 42. Defendants argue that sanctions may be imposed under Federal Rule of Civil Procedure 11 because the decision to pursue the motion to remand after amending the complaint to include a federal claim was "frivolous, legally unreasonable, without a proper factual foundation, or [was] brought for an improper purpose." Dkt. No. 41 at 2. Defendants request $2,215.00 in sanctions plus $1,000.00 to the court for failing to remove the motion from the court's calendar. *Id.* at 3.

In opposition to the motion for sanctions, plaintiff's attorney places the blame on Mr. Arlas for not specifically raising the federal question issue earlier in his communications regarding the motion for remand. Dkt. No. 42 at 1. This argument is not persuasive or appealling, because Mr. Yesk should have known that the motion for remand was meritless from the time he filed the FAC. Mr. Yesk also argues that Mr. Arlas's travel time should not be compensated because he could have appeared by telephone at the hearing. *Id.*

United States District Court
For the Northern District of California

Rule 11 is reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation . . ." *Operating Engineers Pension Trust v. A–C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). Here, the motion to remand was not frivolous or legally unreasonable when it was filed. It was only Mr. Yesk's pursuit of the motion after the filing of the FAC that was improper. While Mr. Yesk should have withdrawn the motion to remand, the court does not find that Mr. Yesk's failure to do so was motivated by an intent to harass or cause harm to defendants. Accordingly, the request for sanctions is denied.

### III. Order

For the reasons explained above, the motion to dismiss is GRANTED without leave to amend. The motion for sanctions is DENIED.

Dated: October 31, 2014

*Ronald M. Whyte*
Ronald M. Whyte
United States District Judge